1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JONATHAN BARASA HITEN,                    Case No.  1:22-cv-00473-JLT-BAM

12                    Plaintiff,
                                               **FINDINGS AND RECOMMENDATIONS**
13            v.                               **REGARDING PLAINTIFF'S MOTION FOR**
                                               **SUMMARY JUDGMENT**
14   KILOKO KIJAKAZI, Acting Commissioner
     of Social Security,[1]                     (Docs. 21, 22)
15
16                    Defendant.               FOURTEEN-DAY DEADLINE

17

18                              **<u>Findings and Recommendations</u>**

19                                   **<u>INTRODUCTION</u>**

20          Plaintiff Jonathan Barasa Hiten ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for supplemental security

22   income under Title XVI of the Social Security Act.  The matter is currently before the Court on

23   Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral

24   argument, to Magistrate Judge Barbara A. McAuliffe, for issuance of findings and recommendations.

25

26   _____

27   [1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d)
     of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this
28   suit.

                                                    1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a whole or based upon proper legal standards.  Accordingly, this Court will recommend granting Plaintiff's motion for summary judgment, granting Plaintiff's appeal, and reversing the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income on April 25, 2019.  AR 273-94, 295-96.[2]  Plaintiff alleged that he became disabled on January 1, 2015, due to hemiplegia on right side of body, asthma, high blood pressure, learning disability/speech, seizures, torn ACL of right knee, and problems with his right foot.  AR 320.  Plaintiff's application was denied initially and on reconsideration.  AR 92-96, 99-103.  Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Lawrence Levey issued a decision denying benefits on July 29, 2021.  AR 12-26, 32-61.  Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied. AR 1-5.  This appeal followed.

### Relevant Hearing Testimony

ALJ Lawrence Levey held a telephonic hearing on July 8, 2021.  Plaintiff appeared with his attorney, Jonathan Pena.  Stephen Davis, an impartial vocational expert, also appeared and testified. AR 15, 34.

In response to questions from his attorney, Plaintiff testified that he has a driver's license and drives about once a week.  He has not done any work since his amended disability date of April 2019. He probably would not be able to do a full-time job because he gets frustrated, he gets yelled at, and he cannot keep up.  AR 39-40.

With respect to his mental health, Plaintiff testified that he deals with depression.  He receives treatment at Mental Health and takes medication, both of which help with his symptoms.  Because of his depression, he sometimes does not want to get up or leave his room and he will lash out at the

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

smallest thing.  He estimated that 10 to 15 days out of an average month he would have difficulty getting out of bed because of the depression.  He will wake up and cry, thinking nothing will change for the better.  He also will have crying spells on days when he actually does get out of bed.  AR 40-42.

When asked about his alcohol use, Plaintiff testified that he last had alcohol the week before the hearing.  He is returning to AA.  The longest period in 2019 without any alcohol was 19 days.  He went in for rapid detox the year prior to the hearing.  He thought he had a handle on it, but it did not work out and he started going back to AA.  He has a sponsor who lives in Illinois.  AR 42-43.

When asked about his physical issues, Plaintiff testified that he has difficulties with the upper and lower extremities (arm and leg) on his right side, which is called hemiplegia.  There is a loss of muscle strength in his right upper extremity, and it pops out of the socket.  It sometimes causes pain or pops out during his regular activities.  It hurts to reach out in front of him.  He can use his upper right extremity for about eleven minutes while doing activities and will need a seven-minute break.  With regard to the lower extremities, he has a torn ACL in his right leg.  He has a severe limp.  He drags his foot and sometimes trips on it.  He can walk about 20 minutes before he needs to take a break.  He can stand for about 15 minutes.  In a typical day, he lies down and rests about five times for about 20 minutes each time.  AR 43-46

When asked about daily chores, Plaintiff testified that he could throw out the trash, sweep, and dust.  He goes to the grocery store with his mom.  He does not attend any social activities or group meetings other than AA.  AR 46.

Plaintiff also testified that he has brain damage, which affects his cognition, ability to focus and concentrate, and his speech.  People ask him to repeat things all the time.  AR 46-47.

In response to questions from the ALJ, Plaintiff confirmed that there are periods time when he does not take his prescribed medications, but was currently taking them every day.  He stopped getting in fights when he stopped going to bars.  He last had a fight about two years prior to the hearing.  He does not have a local sponsor because the sponsor moved away.  He usually does not pay for drinks and will have them at a friend's house.  He gets together with his friends about once every two or three weeks.  AR 48-49.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE"), which included hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume an individual with the same age and educational level as Plaintiff with no past relevant work experience. The ALJ also asked the VE to assume an individual limited to the light exertional level, who could utilize his right lower extremity for pushing, pulling and operation of foot controls on no more than an occasional basis, could utilize his non-dominant right upper extremity for pushing or pulling on no more than an occasional basis, could occasionally climb ramps or stairs and balance, was precluded from climbing ladders, ropes or scaffolds, could engage in stooping, kneeling, crouching and crawling on a frequent, but not constant basis, could utilize his non-dominant right upper extremity for reaching on a frequent but not constant basis, could unitize the non-dominant right upper extremity for gross manipulation, fine manipulation, and feeling on a frequent but not constant basis, could have frequent but not constant exposure to temperature extremes, excessive wetness, excessive humidity and excessive vibration, and would need work in an environment where the noise level is no more than moderate, as defined in the Selected Characteristics of Occupations, must avoid concentrate exposure to environmental irritants and all work-related exposure to unprotected heights and hazardous machinery.  This individual also was limited to performing simple, routine and repetitive tasks in a work environment free of fast-paced production requirements, that involved only simple, work-related decisions, with few if any changes in the workplace, no required interpersonal interaction with members of the general public, and no more than occasional and non-intensive interpersonal interaction with co-workers and supervisors. AR 51-52.  The VE testified that there would be occupations that this individual could perform, such as shipping and receiving weigher (DOT number 22-587-074, unskilled at 2, light, 63,300), produce weigher (299.587-010, unskilled at 2, light, 13,500), and final inspector (727.687-054, unskilled, SVP: 2, light, 25,100 national).  AR 52-54.

The VE also testified that employer tolerance for an employee being off task in an unskilled full-time competitive environment is 12 percent, equating to about 37 minutes.  Employer tolerance for impairment-related absences in unskilled, full-time competitive employment is 10 days a year.  AR 54.  The VE affirmed that his testimony regarding push-pull was based on his 40 plus years'

experience in job analyses.  His testimony regarding off task and absenteeism information was from Bureau of Labor Statistics reports and contact with employers.  AR 54-55.

For the second hypothetical, Plaintiff's counsel asked the VE to add that the individual would be further restricted to occasional finger and handle with the right, non-dominant upper extremity and standing and walking for four hours.  The VE testified that these restrictions would eliminate the jobs of produce weigher and final inspector.  If the non-dominant upper extremity were limited to rare— less than occasional, then that would be work-preclusive.  AR 54-56.  If the individual took five unscheduled breaks lasting for 15 minutes each, that would be work-preclusive.  AR 56.

For the third hypothetical, the ALJ asked the VE to consider the first hypothetical and add that the individual could only occasionally utilize the non-dominant, right upper extremity for fine manipulation, but still frequent gross manipulation and feeling.  The VE testified that in his opinion the cited jobs of shipping and receiving weigher, produce weigher and final inspector could still be done.  The VE indicated that the Dictionary of Occupational Titles ("DOT") did not distinguish between dominant and non-dominant, and his opinion was based on exposure to jobs and job analyses. According to the VE, the DOT listed final inspectors as frequent fingering, but the VE saw the job as mostly grasping, so disagreed with the DOT, but the other jobs involved only occasional fingering. The VE explained that his disagreement was basically from seeing the job.  The VE estimated that the job involved probably 90 percent grasping and no fingering.  AR 56-58.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-26.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 25, 2019, his application date.  AR 17.  The ALJ identified the following severe impairments:  alcohol and cocaine use disorders, depressive disorder, anxiety disorder, borderline intellectual functioning, seizure disorder, hypertension, anemia, cerebral palsy, and history of asthma.  AR 17.  The ALJ determined

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 17-20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except:  Plaintiff could utilize his right lower extremity for pushing, pulling, and operation of foot controls on no more than an occasional basis; could utilize his nondominant right upper extremity for pushing or pulling on no more than an occasional basis; could occasionally balance and climb ramps and stairs; was precluded from climbing ladders, ropes, or scaffolds; could engage in stooping, kneeling, crouching, and crawling on a frequent but not constant basis; could utilize his non-dominant right upper extremity for reaching on a frequent basis but not constant basis; and could utilize his non-dominant right upper extremity for gross manipulation, fine manipulation, and feeling on a frequent basis; could have frequent but not constant exposure to temperature extremes, excessive wetness, excessive humidity, and excessive vibration; needed work in an environment where the noise level was no more than moderate, as defined in the Selected Characteristics of Occupations; was required to avoid concentrated exposure to environmental irritants; was required to avoid all work related exposure to unprotected heights and hazardous machinery; and was limited to performing simple, routine and repetitive tasks in a work environment free of fast-paced production requirements, one that involved only simple work-related decisions, with few, if any, changes in the workplace, no required interpersonal interaction with members of the public, and no more than occasional and non-intensive interpersonal interaction with coworkers and supervisors.  AR 20-25.  Plaintiff did not have any past relevant work, but with this RFC, the ALJ determined that there were jobs existing in the national economy that Plaintiff could perform, such as shipping and receiving weigher, produce weigher, and final inspector.  AR 25-26. The ALJ therefore concluded that Plaintiff had not been under a disability since April 25, 2019.  AR 26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff raises the following arguments:  (1) the ALJ's rejection of the opinion from Dr. Ekram Michiel, a consultative psychiatric examiner, is not supported by substantial evidence; (2) the ALJ's

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

mental RFC is not supported by substantial evidence; and (3) the ALJ erred at step five by failing to conduct a proper inquiry between the VE testimony and the DOT.  (Doc. 21.)

### A.   Evaluation of Dr. Michiel's Medical Opinion

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 416.920c.  Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(b)(2).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *Woods,* 32 F.4th at 792.  The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.* (internal citations omitted).

Consultative Examiner

Plaintiff challenges the ALJ's evaluation of the opinion of the consultative psychiatric examiner, Dr. Ekram Michiel.  (Doc. 21 at pp. 17-25.)

On September 26, 2023, Dr. Michiel completed a psychiatric evaluation.  AR 663-66.  On mental status examination, Plaintiff's mood was depressed and angry, his thought process was goal-

directed, his thought content appeared to be paranoid, and he admitted to auditory and visual hallucinations.  Plaintiff's cognitive skills showed some impairment.  Dr. Michiel diagnosed Plaintiff with a mood disorder, depressed, due to direct physiological effect of general medical condition, seizure disorder, hypogonadism and hypothyroidism; alcohol dependence; alcohol-induced mood disorder and psychotic disorder; and learning disorder.  AR 665-66.  Dr. Michiel opined, "From a psychiatric point of view and based upon the evaluation and observation throughout the interview, I believe that the claimant is unable to maintain attention and concentration to carry out simple job instructions."  AR 666.  Dr. Michiel also believed that Plaintiff was unable to handle his own funds because of alcohol dependence.  AR 666.

Dr. Michiel additionally completed a Medical Statement of Ability to Do Work-Related Activities (Mental) form.  AR 667-69.  He identified no limitations in the ability to understand and remember simple instructions, but opined that Plaintiff had mild to moderate limitation in the ability to carry out simple instructions.  He also had moderate to marked limitations in the ability to make judgments on simple work-related decisions and understand and remember complex instructions.  He also had marked limitations in the ability to carry out complex instructions and make judgments on complex work-related decisions.  Dr. Michiel identified the following factors that supported his assessment:  alcohol dependence; alcohol induced mood disorder; psychotic disorder; mood disorder depressed due to general medical condition; and learning disorder.  AR 667.  Dr. Michiel further opined that Plaintiff had mild limitations in interacting appropriately with the public, but moderate to marked limitations in the ability to interact appropriately with supervisors and co-workers and in the ability to respond appropriately to usual work situations and to changes in a routine work setting.  AR 668.  Dr. Michiel identified the same factors that supported his prior assessment.  Dr. Michiel also identified an "attention/concentration/memory impairment," which he supported by reference to Plaintiff's history and the psychiatric interview.  AR 668.

In evaluating Dr. Michiel's opinion, the ALJ summarized the opinion and reasoned, in relevant part, as follows:

> The opinion, while reflected to some extent in the assessment of the claimant's RFC, somewhat overstates the level of the claimant's impairment-related limitations in a manner

1

2

inconsistent with the generally normal objective findings reported by the claimant's treating sources as documented above.

3

4

5

6

AR 24.  The ALJ's statement appears to address the consistency factor by explaining that Dr. Michiel's opinion was "inconsistent" with objective findings reported by other medical sources. However, the ALJ not only fails to explain or discuss the supportability factor, but also fails to articulate how persuasive he found Dr. Michiel's opinion.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Because the ALJ did not address, explain, or otherwise articulate how persuasive he found the opinion or how he considered the factor of supportability, the Court finds that he erred.  The regulations require that an ALJ must "articulate ... how persuasive" he or she finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 416.920c(b), and "explain how [he or she] considered the supportability and consistency factors" in reaching these findings, *id.* § 416.920c(b)(2). *Woods*, 32 F.4th at 792 ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, ... and 'explain how [it] considered the supportability and consistency factors' in reaching these findings"); *see also Cruz v. Kijakazi*, No. 1:21-cv-1248 JLT HBK, 2023 WL 4074773, at *2 (E.D. Cal. June 20, 2023) (noting Ninth Circuit's observation that "an ALJ must explain how both the supportability and consistency factors were considered"); *Kimberli M. S. v. Kijakazi*, No. 21cv1836-AJB-MDD, 2023 WL 2346330, at *7 (S.D. Cal. Mar. 3, 2023)  ("In addition to consistency, the ALJ must consider and articulate supportability in determining the persuasiveness of medical opinions."); *Anthony M. W. v. Comm'r of Soc. Sec.*, No. 21-cv-08018-RMI, 2023 WL 2352238, at *5 (N.D. Cal. Mar. 3, 2023) ("the regulations require that the factors of supportability and consistency be addressed explicitly"); *Gonzales v. Kijakazi*, No. 1:20-cv-01530-SKO, 2022 WL 267438, at *8 (E.D. Cal. Jan. 28, 2022) ("In all cases, an ALJ must at least 'explain how [they] considered' the supportability and consistency factors, as they are 'the most important factors.' §§ 404.1520c(b)(2), 416.920c(b)(2).").  Further, the Ninth Circuit has advised that "ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision."  *Wood*, 32 F.4th at 793 n.4.

27

28

The Commissioner argues that Dr. Michiel's own examination "did not support greater limitations than the ALJ assessed."  (Doc. 22 at p. 13.)  In particular, the Commissioner points out that

1    the ALJ noted Dr. Michiel "documented some cognitive and memory impairment, but he also noted

2    that Plaintiff's thought processes were goal directed; he was oriented to person, place, and date; and

3    his insight and judgment were intact." (*Id.*)  The Commissioner also indicates that Dr. Michiel

4    appeared unaware of Plaintiff's cocaine use and that Plaintiff was diagnosed with a cocaine use

5    disorder in May and December 2020. (*Id.*)  The Commissioner admits that the ALJ did not discuss

6    these findings when evaluating Dr. Michiel's opinion, but asserts that they were documented earlier in

7    the decision. (*Id.*)  While the Commissioner is correct that the ALJ mentioned these findings

8    elsewhere in the opinion, the findings alone are not an articulation by the ALJ of the persuasiveness or

9    supportability of Dr. Michiel's opinion.  The Court is constrained to review the reasons the ALJ

10   asserts. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

11          The Commissioner further argues that even if the ALJ erred by not sufficiently articulating the

12   persuasiveness analysis for Dr. Michiel's opinion, any error was harmless because substantial

13   evidence in the record as a whole supported the ALJ's finding that the examiner's opinion overstated

14   Plaintiff's limitations. (Doc. 22 at p. 15.)  While the Commissioner is correct that substantial evidence

15   must support the ALJ's decision, that alone also is not sufficient to discredit a medical opinion.  As

16   stated above, "[a]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or

17   inconsistent *without providing an explanation* supported by substantial evidence" *Woods*, 32 F.4th at

18   792 (emphasis added); *see Kimberli M. S.*, 2023 WL 2346330, at *7 (rejecting Commissioner's

19   argument that an ALJ's decision to discredit a medical opinion "must simply be supported by

20   substantial evidence;" finding ALJ insufficiently articulated evaluation of the supportability factor

21   where ALJ made no explicit determination of supportability).

22          The Court has considered whether the error in the ALJ's supportability analysis might be

23   harmless based on the ALJ's consistency analysis. However, given the general nature of the ALJ's

24   statement regarding "inconsistent" treatment records, it is difficult to determine that the supportability

25   error is inconsequential to the disability analysis and therefore harmless.  The ALJ does not provide

26   any explanation as to which portions of Dr. Michiel's opinion or limitations he finds overstated or

27   inconsistent with the records.

28

In the opinion, the ALJ indicated that the treatment records generally showed that Plaintiff demonstrated logical thought processes, normal thought content, average cognitive functioning and memory, and a normal orientation and his insight and judgment were similarly described as being intact except as to his alcohol addiction.  AR 22, AR 527 (stable), 439-73, 475-528, 565-98, 600-52, 672 (normal mood, normal behavior), 685-714, 527.)  The ALJ also noted that during the relevant period, Plaintiff's mood, affect, and behavior were described as normal, and he had normal attention span and concentration.  AR 23, 574 (normal mood and affect; normal attention span and concentration; poor historian and limited awareness of medication regimen); 398 (alert and cooperative; normal mood and affect; normal attention span and concentration).  However, Plaintiff's treatment records during the relevant period also reflect findings of agitated behavior, depressed and hopeless mood, impaired ability to concentrate, and poor or impaired insight and judgment.  AR 444-47 (05/14/2019); 470-73 (06/04/2019); AR 514 (8/27/2019; insight and judgment impaired somewhat as it relates to addiction of ETOH); 518 (07/30/2019; same); 522 (07/02/2019; same); 526 (06/04/2019; same); 601 (12/29/2020; depressed); 610-12 (12/08/2020; depressed, hopeless, worried; poor insight and judgment); 640-42 (05/21/2020; depressed, poor insight and judgment); 692 (2/24/2021; depressed); 697 (01/27/2021; depressed).  Moreover, the ALJ acknowledged that the record indicated Plaintiff's mental impairments were better controlled during periods of compliance with medication, but worse during his extended periods of noncompliance, with Plaintiff admitting that he had never been compliant for more than a few days at time.  AR 22-23.  As there is no explanation by the ALJ as to how the treatment records and Plaintiff's brief periods of compliance are inconsistent with any portion of Dr. Michiel's opinion or identified limitations, the Court cannot find that it is supported by substantial evidence. *Woods*, 32 F.4th at 792; *Marie S. v. Kijakazi*, No. 20-CV-2196-MMA-BGS, 2023 WL 2265227, at *16 (S.D. Cal. Feb. 28, 2023), report and recommendation adopted, No. 20-CV-2196-MMA (BGS), 2023 WL 2637388 (S.D. Cal. Mar. 24, 2023) (concluding ALJ's generalizations about inconsistency made it challenging to find supportability errors inconsequential where ALJ did not indicate what if any limitations or portions of the medical opinion he found inconsistent with records).

///

**B.    Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should specifically address the factors of supportability and consistency with respect to Dr. Michiel's opinion.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments concerning whether the ALJ's mental RFC assessment is supported by substantial evidence or whether the ALJ erred at step five by failing to conduct a proper inquiry between the VE testimony and the DOT. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.    Plaintiff's motion for summary judgment (Doc. 21) be granted;

2.   Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be granted and the agency's determination to deny benefits be reversed; and

3.   The Clerk of this Court be directed to enter judgment in favor of Plaintiff Jonathan Barasa Hiten and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 7, 2023**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE

14